O’CONNELL, Justice.
Claimant, Nellie Maffitt, sustained a com-pensable accident on December 17, 1958 when she slipped and fell on her employer’s floor. She fell on her back with her left arm under her and experienced pain in her wrist and her chest. The employer, Henderson’s Portion-Pak, Inc., furnished medical care, including psychiatric evaluation, and paid compensation on a temporary total disability basis until April 19, 1959.
On July 24, 1959 a hearing was held before a deputy commissioner at the conclusion of which he entered an order finding that claimant had no residual organic disability but was temporarily totally disabled because of a traumatic neurosis. He ordered the employer to provide claimant with psychiatric care and to pay temporary total disability compensation from April 19, 1959 until the termination of such disability. No review of this order was sought.
Claimant was provided with such psychiatric care by Dr. George Jacobson. She was hospitalized and given electro-shock therapy. In December 1959 she was discharged by Dr. Jacobson and the compensation payments were terminated on December 28, 1959.
Thereafter claimant filed her claim for further temporary total disability compensation and psychotherapy. In addition she made claim for a hernia repair.
The same deputy commissioner conducted a hearing on February 16, 1960 at which claimant, her family attorney, her daughter, Dr. Jacobson, and Dr. Stewart, a specialist in internal medicine, testified.
In his order the deputy found that the hernia pre-existed claimant’s industrial accident and such accident was not responsible for any aggravation thereof. Thus, he found the employer was not responsible for the repair of such hernia. He also found that claimant had reached maximum medical improvement on December 1, 1959 with a “permanent partial disability and loss of wage earning capacity equal to 15% of the body as a whole.”
It was also the deputy’s finding that claimant “can benefit from further psychotherapy, the cost of which is estimated to be $250.00.”
The deputy ordered payment of compensation by the employer for the permanent partial disability and of the $250 for future psychotherapy in a lump sum. After ordering the employer to pay $800.00 as an attorney’s fee and to pay the costs of the proceedings, the deputy then set out in his order that he retained jurisdiction for one year “after which claimant’s ultimate loss of wage earning capacity shall be adjudicated.”
Claimant petitioned the full commission for a review, urging error in the deputy’s failure to order the employer to provide the hernia repair and in his finding that she had reached maximum medical improvement, with a permanent partial disability of 15%.
The employer and its carrier filed a cross-application for review. They argued that the deputy had erred in finding any permanent disability related to the accident, in awarding future medical care, and in reserving jurisdiction for one year. They also urged reduction of the award for the attorney’s fee in the event the award for permanent disability should be vacated.
Upon review the full commission entered its order stating it found competent substantial evidence to support the findings of the deputy with the exception of the finding that claimant could benefit from further psychotherapy, at an estimated cost of $250. It stated such finding was not supported by competent substantial evidence.
Further, the commission ruled the deputy erred in retaining jurisdiction for a period of one year to determine the ultimate loss of wage earning capacity. It stated that any adjustment of her loss of wage earning *412 capacity after the original adjudication thereof “must be by the avenue of Section 440.28, Florida Statutes, relating to petitions for modification.”
From this order both the claimant and the employer, together with its carrier, sought review by this Court. Oral argument on the two petitions was consolidated and the two petitions shall be disposed of in this decision.
Claimant argues that the deputy erred in his determination that the employer should not be held responsible for any hernia repair in that there was no causal relationship between the industrial accident and such hernia or aggravation thereof. We find the deputy’s finding thereon was adequately set out in his order and was supported by competent substantial evidence, as found by the full commission.
We also rule against claimant’s contention that the deputy properly reserved jurisdiction for one year. As noted by the commission, the proper avenue for future modification of a compensation award is delineated in Sec. 440.28, F.S.A. The commission correctly declined to affirm the deputy’s action in that respect. However, as shall be seen, this point does not require determination here for we are of the opinion claimant experienced no permanent disability because of her industrial accident, in the sense of loss of wage earning capacity.
Claimant urges that the deputy erred in finding she had reached maximum medical improvement on December 1, 1959, with a residual permanent partial disability of 15%. She contended that she continued to be temporarily totally disabled.
At the hearing two doctors, Dr. Jacobson and Dr. Stewart, testified. Dr, Stewart testified chiefly concerning claimant’s hernia. Dr. Jacobson’s testimony, therefore, formed the chief basis for the deputy’s finding. It is to be recalled that claimant suffered from no residual organic disability because of her accident. Her disability was psychiatric and Dr. Jacobson was her attending physician. His testimony was that he last saw her on December 1, 1959 and felt that as of that time, from a psychiatric standpoint, she had reached maximum medical improvement. Next, he made the positive assertion he did not feel that any further psychiatric or other treatment was indicated at the present time.
This statement made by Dr. Jacobson, the attending physician, would appear to constitute competent substantial evidence to support the deputy’s finding that claimant had reached maximum medical recovery on December 1, 1959.
However, this same doctor subsequently indicated that in his opinion claimant would require further psychiatric treatments. He expressed the view that as long as the matter was in litigation and as long as she received compensation on a temporary total disability basis, together with psychotherapy provided by her employer, claimant would have a subconscious motivation to keep her symptoms. He recommended that any permanent disability compensation awarded be paid in a lump sum, in order to remove this subconscious motivation. He was then asked whether he thought she would benefit from any subsequent psychotherapy, replying in the affirmative but with the qualification that such subsequent therapy should in no way reopen the case or have any bearing on it. The deputy then asked him how many treatments claimant would require in order to convince her that the litigation was at an end and that “she had to be on her own.” The doctor answered she would need about eight to ten visits to the psychiatrist.
This latter, self-contradictory statement made by Dr. Jacobson obviously was utilized by the deputy as the basis for his order to the employer to pay a sum of $250' to meet the cost of future psychotherapy. Yet, such a finding obviously cannot be reconciled with the concurrent finding that *413 claimant had theretofore, on December 1, 1959, reached maximum medical improvement, or with Dr. Jacobson’s first statement that no further psychotherapy was indicated.
It is apparent that the deputy’s contradictory determinations were the result of the enigma of claimant’s condition. As long as she continued to receive assistance from the employer and its carrier, the longer she would take to recover, because of the subconscious motivation to perpetuate her complaints. Yet, it would appear, if such assistance were immediately suspended, further psychotherapy, furnished at her own expense, as viewed by the claimant, would he required to convince her she had nothing further to gain in the perpetuation of such symptoms.
It is our view that the deputy’s error lay in his obvious assumption that the employer was responsible for the providing of such psychotherapy due to a causal relationship between the industrial accident and the neurosis.
We find no competent showing that such was the case. Claimant’s difficulty was chiefly reflected in her state of depression. The record reveals that the electro-shock therapy was quite effective in erasing such depression. It was only upon her return to and sojourn in an unpleasant home environment that she again succumbed to a depressive state. Dr. Jacobson was of the opinion that the home environment and the problems and responsibilities claimant had always assumed were greatly responsible for her depression. Relating to her first seizure of depression, he was of the view the industrial accident was “the straw that broke the camel’s back” and “pushed her over the brink.” But this seizure was apparently cured by the psycho-shock therapy given to the claimant in the hospital, although Dr. Jacobson did admit that within eight days thereafter there was an indication that she had begun to slip back into her depressive state. It is of significance to note that those eight days were spent by the claimant in the detrimental home environment.
It is our opinion that the evidence to support the deputy’s finding, which in effect was that future psychotherapy because of this second seizure of depression was necessitated by the industrial accident, was not substantial, according with logic and reason.
In fact, we are tempted to agree with the commission that there was no competent substantial evidence to support a finding that future psychotherapy was required, for Dr. Jacobson’s first statement in reference to that issue was, as noted, an unequivocal assertion that no such treatment was indicated. However, in view of our above conclusion we find it unnecessary to pursue this issue.
We do note, incidentally, that the Workmen’s Compensation Act does not warrant the method advocated by the deputy for the payment to the claimant in a lump sum an amount to he utilized by her in the obtaining of medical treatment. The provisions of Sec. 440.13(1), F.S.A., require, instead, that the employer furnish such treatment under the supervision of a physician.
The employer and its carrier argue that the deputy erred in finding a permanent partial disability requiring their payment of compensation therefor.
It is uncontroverted that subsequent to the date of maximum medical recovery claimant suffered no residual organic disability but continued to suffer from a psychiatric disorder. Dr. Jacobson testified that from a psychiatric standpoint claimant could return to the same type work she was doing for her employer before her accident.
This testimony was of course opposed by claimant’s contention she continued to be temporarily totally disabled. Claimant ar *414 gues that the fact the psychiatrist subsequently testified concerning the industrial accident having been “the straw that broke the camel’s back” compels the conclusion she was unable to work.
We cannot agree with the commission that there was competent substantial evidence to support the deputy’s finding that claimant, because of the industrial accident, had suffered a 15% loss of wage earning capacity. There was positive testimony that her psychiatric disorder would not preclude her performing the same duties performed by her prior to the accident. There was an absence of competent substantial evidence that the industrial accident inflicted upon the claimant a loss of wage earning capacity “in the same or any other employment,” according to the statutory definition of “disability” found in Sec. 440.02 (9), F.S.A. While there was evidence to support a finding that the industrial accident triggered the first seizure of depression there was none, other than the claimant’s assertions, to the effect that the neurosis itself diminished in any degree her capacity to earn wages. Nor does the evidence adequately support the conclusion the industrial accident was responsible for the second, current depressive episode. The tests of Ball v. Mann, Fla.1954, 75 So.2d 758 and Southern Bell Telephone & Telegraph Co. v. Bell, Fla.1959, 116 So.2d 617 are applicable to this case and have not been met by the claimant herein.
The claimant’s petition for writ of cer-tiorari is hereby denied. The petition of the employer and its carrier is hereby granted and the order of the full commission, insofar as it relates to the finding of permanent partial disability, is quashed. In all other respects the commission’s order is affirmed and the cause is remanded to it for further proceedings consistent herewith.
ROBERTS, C. J., and THOMAS, DREW and THORNAL, JJ., concur.